Filed 2/23/22 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHARLOTTE KIRK et al., | B309880 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCP02842) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| BRETT RATNER et al., | [No change in the appellate judgment] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on February 10, 2022 be modified as follows:

At the bottom of page 7 and continuing to the top of page 8, delete the language that now reads:

> because Marshall, although a signatory of the Duchess Agreement, was not a party to the settlement agreement and could not be compelled to arbitrate any disputes with the executives.

and replace it with the following language:

> because Marshall was not a party to the settlement agreement or a signatory to any other agreement with the executives and could not be compelled to arbitrate any disputes with them.

There is no change in the appellate judgment. Appellants' petition for rehearing is denied.

_____

PERLUSS, P. J.          SEGAL, J.          FEUER, J.

Filed 2/10/22 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHARLOTTE KIRK et al., | B309880 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCP02842) |
| v. | |
| BRETT RATNER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge. Dismissed.

Fagelbaum & Heller, Jerold Fagelbaum and Philip Heller for Plaintiffs and Appellants Charlotte Kirk and Neil Marshall.

Lavely & Singer, Martin D. Singer, Michael E. Weinsten and Allison S. Hart for Defendants and Respondents Brett Ratner, Kevin Tsujihara, James Packer and Avi Lerner.

_____

Charlotte Kirk, an actress, using the pseudonym Melissa Parker, entered into a confidential settlement agreement in August 2017 with four entertainment industry executives, Brett Ratner, Kevin Tsujihara, James Packer and Avi Lerner, using the fictitious names Clark Grandin, Bruce Hamilton, Gregory Kemp and Walter Nelson in the agreement and documents filed in the superior court. The agreement contained an arbitration clause.

The executives filed a demand for arbitration in June 2020, naming Kirk (as Parker) and Neil Marshall (actual name), Kirk's fiancé, and two others as respondents, asserting claims for breach of contract, interference with contract and civil extortion. The executives obtained from an emergency arbitrator a preliminary injunction prohibiting Kirk, Marshall and the other respondents from disclosing confidential information as that term is defined in the settlement agreement, including any disclosures in court documents, and from initiating any lawsuit against the executives in violation of the arbitration provisions in the settlement agreement.

Kirk (as Parker) and Marshall filed a petition in superior court to vacate the preliminary injunction. Because the emergency arbitrator's ruling was not an "award" within the meaning of Code of Civil Procedure section 1283.4,[1] the court dismissed the petition for lack of jurisdiction. For the same reason, we dismiss Kirk and Marshall's appeal as taken from a nonappealable order.[2]

---

[1]     Statutory references are to this code.

[2]     The settlement agreement obligated any party petitioning to vacate the arbitrator's award to seek an order sealing all documents in the court file "to the greatest extent permissible by

law." The superior court made the required findings under California Rules of Court, rule 2.550 and granted motions by both sides to seal all documents filed with the court and implicitly approved the use of pseudonyms in court documents. While the appeal was pending in Division Three of this court, the presiding justice permitted appellants to file their appendix conditionally under seal, subject to further ruling by the panel hearing the case; and the parties used pseudonyms in their briefs

We notified the parties pursuant to California Rules of Court, rule 8.46(f)(3) that, absent a showing of good cause, we intended to unseal the entire record and use the true names of the parties in our opinion. We observed the documents filed under seal included newspaper and magazine articles that identified the parties (including photographs), discussed the underlying facts of the case and the parties' dispute and described the events that prompted the executives to initiate arbitration. We suggested that, because the facts of the dispute have become public, any justification for using pseudonyms or sealing the record that may have existed no longer does. (See *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 898 ["there is no justification for sealing records that contain only facts already known or available to the public"].)

Kirk and Marshall, who challenge the validity of the confidentiality provisions in the settlement agreement, said they only filed the material under seal because they did not want the executives to accuse them of violating the settlement agreement and the preliminary injunction.

For their part, the executives first contended, incorrectly, if the superior court's order was not appealable, we would lack jurisdiction to decide whether documents in the appellate record should remain sealed. (See *H.B. Fuller Co. v. Does, supra,* 151 Cal.App.4th at p. 889 ["[t]his court is master of its own files"].) The executives next argued the contractual provision to keep the names of the parties and the terms of the agreement secret overrode the right of public access. (See Cal. Rules of

3

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Confidential Settlement Agreement*

Following two days of mediation in August 2017 Kirk, Joshua Newton (using the pseudonym Matthew Waller) and the executives entered into a confidential settlement agreement and mutual release that fully resolved (with no admission of wrongdoing) Kirk's claims of sexual harassment, infliction of emotional distress and defamation. In addition to payment of substantial sums to Kirk, consideration for the settlement and promise of confidentiality included the executives' agreement to invest in a film project to be written, directed and produced by Newton, starring Kirk as the female lead.

The settlement agreement's confidentiality provision prohibited Kirk and Newton from disclosing, directly or indirectly, "confidential information," as defined in the agreement, to any person or entity, including media organizations or on Internet social media. "Confidential information," as defined, included the facts, circumstances,

---

Court, rule 2.550(d)(1).) While that might be true in some instances (see *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1283), the widespread public disclosure of the information in the news media vitiates any such interest here because unsealing the record will no longer prejudice the interest in confidentiality. (See Cal. Rules of Court, rule 2.550(d)(3).) Acknowledging that fact, the executives also argued the media stories had not disclosed all of the confidential information and in some instances had described it inaccurately. We invited counsel for the executives to propose narrowly tailored redactions to protect such information. After reviewing their submission, we authorize limited redactions in a separate order filed concurrently with this opinion.

allegations and contentions giving rise to Kirk's claims against the executives; the facts, circumstances, existence and substance of any encounter or communication between Kirk and any of the executives; and the settlement agreement, its negotiation and terms. The impermissible disclosure of confidential information was to be considered a material breach of the agreement.

The parties agreed to arbitrate "any and all future disputes or controversies of any kind or nature between the Parties, including without limitation any claim [or] disputes regarding validity, interpretation, enforcement or claimed breach of this Agreement, however characterized . . . before JAMS under the JAMS Comprehensive Arbitration Rules and Procedures . . . or ADR pursuant to its rules, and California law, to the greatest extent permitted by law." Kirk and Newton acknowledged an unauthorized disclosure of confidential information would cause irreparable harm to the executives and agreed that, upon any breach or threatened breach of the confidentiality provision, the executives would be entitled to immediately obtain injunctive relief from the arbitrator (ex parte issuance of a temporary restraining order and a preliminary injunction) preventing the disclosure (or further disclosure) of confidential information pending the outcome of arbitration. Notwithstanding the arbitration provision, the parties further agreed, without waiving their right to arbitration, the executives could seek injunctive relief in court to prevent a breach of the settlement agreement.

Several months after executing the settlement agreement, the parties entered into a confidential amendment agreement in which the executives promised to invest additional sums in the motion picture being developed by Newton and Kirk and Newton

5

reaffirmed the confidentiality and arbitration provisions of the settlement agreement.

2. *The Demand for Arbitration and the Preliminary Injunction*

Because of ongoing disputes among the parties that allegedly included threats by Kirk and others to disclose confidential information, on June 12, 2020 the executives initiated arbitration with JAMS, asserting claims of breach of contract as to Kirk, Newton and John Cowan, an attorney representing Kirk who had signed a nondisclosure agreement accepting the confidentiality terms of the settlement agreement; intentional interference with contract as to Marshall, who was not a party to the settlement agreement; and civil extortion against all four of them. Contemporaneously with their demand for arbitration the executives filed an ex parte application for a temporary restraining order and order to show cause re preliminary injunction.

Following a telephonic hearing, an emergency arbitrator, appointed pursuant to the JAMS rules identified in the settlement agreement, issued a temporary restraining order prohibiting Kirk, Newton, Cowan and Marshall from disclosing any confidential information as defined in the settlement agreement and from filing a lawsuit in any court against the executives, and ordered Kirk, Newton, Cowan and Marshall to show cause on July 6, 2020 why a preliminary injunction containing the same prohibitions should not issue. Kirk and the other respondents filed opposition papers.

The arbitrator issued a preliminary injunction on July 11, 2020 after a video hearing held several days earlier. The arbitrator's ruling enjoined Kirk, Newton, Cowan and Marshall

6

and any person acting on their behalf from disclosing confidential information, including a disclosure in any document filed in court, and from filing a lawsuit in any court in violation of the arbitration provisions of the settlement agreement, the confidential amendment to the settlement agreement, the confidential nondisclosure agreement or a fourth agreement referred to as the Duchess Agreement. The emergency arbitrator declined to require the executives to post a bond.

3. *The Petition To Vacate the Preliminary Injunction*

Kirk and Marshall on September 4, 2020 filed a petition to vacate the emergency arbitrator's preliminary injunction, initiating a new action in Los Angeles Superior Court.[3] The petition asserted as grounds to vacate the injunction that, prior to issuance of the temporary restraining order, the emergency arbitrator failed to make the full disclosures required by section 1281.9, subdivision (a), and the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, standard 7(d)(15) relating to facts that might cause a person to reasonably entertain a doubt that the arbitrator would be able to be impartial; the injunction violated section 1002, subdivision (d), which prohibits enforcement of settlement agreements that prevent disclosure of information regarding claims of sexual harassment and, therefore, was contrary to public policy and exceeded the emergency arbitrator's authority; and, as to Marshall, the arbitrator exceeded her authority because Marshall, although a signatory of the Duchess Agreement, was not a party to the settlement agreement and

---

[3]    Kirk and Marshall, using the Judicial Council's optional form ADR-106, indicated all names used for petitioners and respondents, other than Marshall's, were pseudonyms.

could not be compelled to arbitrate any disputes with the executives.

The executives filed an opposition to the petition, arguing the preliminary injunction did not constitute an "award" within the meaning of section 1283.4 and the superior court thus lacked jurisdiction to consider the petition. They also filed a response to the petition, addressing the merits of Kirk and Marshall's arguments in support of vacating the injunction.

Following receipt of a reply memorandum from Kirk and Marshall and a hearing on October 15, 2020, the superior court ruled it lacked jurisdiction to consider the petition, relying primarily on the decision of our colleagues in Division Two of this court in *Lonky v. Patel* (2020) 51 Cal.App.5th 831 (*Lonky*). The court denied the petition, stating it was "ordered dismissed without prejudice to refiling once a final award is issued."

Kirk and Marshall filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

The parties' settlement agreement specified arbitration proceedings were to be conducted under California law. Thus, the California Arbitration Act (CAA) (§ 1280 et seq.) governs the issuance of arbitration awards, superior court review of awards and appellate review of superior court orders and judgments approving or disapproving awards.

Section 1283.4 defines an arbitrator's "award" as a written ruling that "include[s] a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." "The issuance of an 'award' is what passes the torch of jurisdiction from the arbitrator to the trial court." (*Lonky, supra,* 51 Cal.App.5th at p. 843.)

8

Section 1285 authorizes a party to an arbitration "in which an award has been made" to petition the superior court "to confirm, correct or vacate the award."  Section 1286 provides the superior court, if a petition has been properly served and filed, must confirm the award as made, confirm it as corrected, vacate the award or dismiss the proceeding.

Our jurisdiction to review superior court orders in arbitration matters is defined by section 1294.  That statute provides an appeal may be taken from "(a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d)  A judgment entered pursuant to this title. [¶] (e) A special order after judgment."

We independently review questions regarding our own jurisdiction.  (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252.)  In addition, we review questions of statutory construction de novo.  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; see *People v. The North River Ins. Co.* (2021) 69 Cal.App.5th 1079, 1087 [when the pertinent facts are undisputed, we review de novo both questions of jurisdiction and issues of statutory interpretation].)

    2.   *The Order Dismissing the Petition To Vacate the Preliminary Injunction Is Not Appealable*

The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal.  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; *Aixtron,*

9

*Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384.)
A superior court's order is generally appealable only when made
so by statute. (*Griset v. Fair Political Practices Com.* (2001)
25 Cal.4th 688, 696 ["[a] reviewing court has jurisdiction over a
direct appeal only when there is (1) an appealable order or (2) an
appealable judgment"; "[a] trial court's order is appealable when
it is made so by statute"].)

Neither Kirk and Marshall nor the executives question the
appealability of the superior court's order dismissing the petition
to vacate the preliminary injunction: All parties cite *Maplebear,
Inc. v. Busick* (2021) 26 Cal.App.5th 394 (*Maplebear*), which
distinguished this court's decision in *Judge v. Nijjar Realty, Inc.*
(2014) 232 Cal.App.4th 619 (*Judge*) and held a superior court
order dismissing a petition to vacate for lack of jurisdiction was
an appealable order. (*Maplebear*, at p. 402.) Nonetheless, we
must raise the issue on our own initiative whenever a doubt
exists as to whether the superior court has entered an appealable
judgment or order: "[W]e have an independent obligation in this
as in every matter to confirm whether jurisdiction exists."
(*California Redevelopment Assn. v. Matosantos*, *supra*, 53 Cal.4th
at p. 252; accord, *Jennings v. Marralle*, *supra*, 8 Cal.4th at p. 126;
see *Olson v. Cory* (1983) 35 Cal.3d 390, 398 ["since the question of
appealability goes to our jurisdiction, we are dutybound to
consider it on our own motion"].)

In *Judge, supra,* 232 Cal.App.4th 619 this court held the
superior court's order vacating an interim arbitration award (a
"clause construction award" determining as a threshold matter
that class and representative claims were subject to arbitration)
was not appealable. (*Id.* at p. 622.) We explained, "Because the
clause construction award does not qualify as an 'award' under

10

section 1283.4, the trial court's order is not an order vacating an arbitration award, and it is not appealable." (*Id*. at pp. 633-634.) In *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125 (*Kaiser Foundation*) we held a superior court judgment confirming a "partial final award" issued by an arbitration panel (determining issues of preemption and exhaustion, while leaving unresolved the merits of the parties' claims of underpayment and overpayment) was not appealable because "the 'award' did not meet the section 1283.4 standards for an award." (*Id*. at p. 1131.) Again we explained, "Parties generally have broad leeway to structure an arbitration as they see fit, free from statutory constraints. . . . Parties' requests for judicial approval or disapproval of arbitration awards are, however, subject to statutory constraints that limit when and under what circumstances courts may review arbitrators' rulings. Those restrictions deprive trial courts of jurisdiction to review an award that does not qualify as an award under section 1283.4 and appellate courts of jurisdiction to review on appeal a judgment that does not qualify as a final judgment under section 1294[, subdivision] (d)." (*Ibid*.)

In light of *Judge* and *Kaiser Foundation*, our jurisdiction to consider the merits of Kirk and Marshall's appeal turns on two questions. First, is the arbitrator's ruling granting a preliminary injunction an award within the meaning of section 1283.4 even though it left unresolved the merits of the parties' claims? Second, if it is not, is an order dismissing a petition to vacate an arbitrator's order that is not an award appealable, as the court held in *Maplebear*, *supra*, 26 Cal.App.5th 394, even though a

11

superior court order granting the petition to vacate is not?  We answer both questions "no."[4]

      a.  *The arbitrator's grant of a preliminary injunction is not an award within the meaning of section 1283.4*

Kirk and Marshall concede the arbitrator's preliminary injunction ruling, a provisional order leaving unresolved all issues of liability and final relief for the parties, does not appear to be an award within the meaning of section 1283.4, as that statutory term was explained in *Lonky*, *supra*, 51 Cal.App.5th 831.  Nonetheless, they contend we should deem as final for judicial review purposes such an interim award of equitable relief.  Their arguments are unpersuasive.

Kirk and Marshall first point out, if the executives had obtained a preliminary injunction from the superior court, the order would have been immediately subject to review in this court.  But as Kirk and Marshall recognize, appellate review of a preliminary injunction is expressly authorized by section 904.1, subdivision (a)(6).  (See *County of San Diego v. State of California*

_____

[4]    We recognize our first question overlaps to a significant extent with the issue raised by Kirk and Marshall's appeal.  If the preliminary injunction ruling is not an award within the meaning of section 1283.4, the superior court likely would not have had jurisdiction to consider the petition to vacate.  (See *Judge*, *supra*, 232 Cal.App.4th at p. 634, fn. 12.)  However, as we explained in *Kaiser Foundation*, *supra*, 13 Cal.App.5th at page 1146, whether an arbitrator's order is an award for purposes of the superior court's jurisdiction to confirm or vacate it and whether the ensuing superior court order is appealable (rather than reviewable only by writ) are not identical questions, as illustrated by the decision in *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415.

(1997) 15 Cal.4th 68, 110 ["order granting the preliminary injunction was 'immediately and separately appealable' under . . . section 904.1, subdivision (a)(6)"].)  Whether an arbitrator's preliminary injunction, which is not enforceable as a court order, may be immediately reviewed by a court is an entirely different question, which depends on the proper interpretation of the governing provisions of the CAA, not section 904.1. (Cf. *Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1022 ["there is a general prohibition against [appealing] nonfinal interlocutory orders in section 904.1, subdivision (a)(1) which applies in the arbitration context"].)

Next, Kirk and Marshall argue, although the court in *Lonky* explained a ruling that is not an award within the meaning of section 1283.4 is not subject to confirmation, correction or vacation by the superior court (*Lonky*, *supra*, 51 Cal.App.5th at p. 844), *Lonky* also recognized that the court of appeal in *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 (*Hightower*) held, in appropriate circumstances, successive awards may be issued by an arbitrator and the absence of the final award does not necessarily preclude judicial review of the interim award.  (*Lonky*, at p. 846.)  *Hightower* does not help Kirk and Marshall.

The dispute in *Hightower* concerned implementation of a buy-sell provision in an agreement between two 50 percent shareholders of a corporation.  The arbitrator issued a partial final award that gave one shareholder the right to obtain financing to buy the shares of the other, reserving jurisdiction to determine issues that might arise if the option was exercised. (*Hightower*, *supra*, 86 Cal.App.4th at pp. 1426-1428.)  The superior court denied the losing shareholder's petition to vacate

13

the award. The court of appeal—in a writ proceeding—determined the superior court had jurisdiction to decide the petition, holding the award, although not final, satisfied the requirements of section 1283.4 because it "determined all issues that are necessary to the resolution of the essential dispute arising from Hightower's breach. . . . Nothing remains to be resolved except those potential and conditional issues that necessarily could not have been determined . . . when the [award] was issued." (*Hightower*, at p. 1439.)

As explained in *Lonky*, *supra*, 51 Cal.App.5th at page 845, what *Hightower* teaches is that, "in the context of a series of rulings . . . a particular ruling is an 'award' only if that ruling (1) 'determine[s] all issues that are necessary to the resolution' of "'the controversy'" being subject to arbitration, and (2) leaves unresolved only those 'issues' that are 'potential,' 'conditional' or that otherwise 'could not have been determined' at the time of the ruling." Our analysis in *Kaiser Foundation* similarly emphasized the very limited nature of the *Hightower* decision: "The arbitrator in *Hightower* resolved all the issues necessary as of the date of the award to determine the parties' controversy regarding the breach of the shareholder agreement and the appropriate remedy for the breach. The issues left open for resolution in a subsequent award simply could not have been decided as part of the partial final award because their nature and scope were uncertain as of the award date." (*Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1149.) Here, in contrast to *Hightower*, no part of the controversy between Kirk and Marshall, on the one hand, and the executives, on the other, was resolved by the preliminary injunction. The issues left open were neither

14

potential nor conditional based on events yet to occur; they were known and capable of being resolved.

Kirk and Marshall attempt to erase this clear distinction between the preliminary injunction here and the award in *Hightower* by arguing that whether interim equitable relief should be granted was a discrete matter; all issues necessary for resolution of that question were determined; and the remaining disputed matters could not be decided with the preliminary injunction ruling because discovery and an evidentiary hearing were necessary for the arbitrator to rule on the merits of the parties' controversy. We rejected a substantially similar argument in *Kaiser Foundation*, where the parties argued the issues of preemption and exhaustion, decided in the initial phase of the arbitration proceeding, were, in effect, raised and completely resolved in a separate action for declaratory relief before the arbitration panel. (*Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1140.) Because the parties did not, in fact, initiate a separate arbitration proceeding for the preemption and exhaustion issues, however distinct from the underlying merits they may have been, the request that the arbitrators decide them first, we held, did not convert an interlocutory ruling into a final one subject to judicial review. (*Id.* at p. 1146 ["The text of section 1283.4 is clear: It specifies that an award must resolve the parties' controversy, not a question within the controversy"].) Interim equitable relief, issued as part of an ongoing arbitration proceeding (indeed, in aid of, and to preserve, the ability of the arbitrator to resolve the dispute) is no less interlocutory and nonreviewable. (See *Lonky*, *supra*, 51 Cal.App.5th at p. 847 ["What matters is whether the ruling 'resolve[d] the parties' *controversy*, not a question within the controversy.' [Citation.]

15

Were the rule otherwise, almost *every* ruling would be an 'award' because almost every ruling decides the issue it was called upon to decide"].)[5]

In a final argument for immediate judicial review of the preliminary injunction, after observing that no published California case has considered the precise question presented here—that is, judicial review of an arbitrator's award of interim equitable relief— Kirk and Marshall urge us to follow analogous federal law on the issue (while acknowledging we are not bound to do so), which treats such orders as sufficiently final for the district courts to confirm and enforce them. The federal policy, however, is based on the provisions of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), which differ from those in the CAA by allowing for immediate review of certain interlocutory or partial awards. (See *Judge, supra*, 232 Cal.App.4th at p. 631 ["There are differences between the two provisions. For example, Section 16 of the FAA states that certain interlocutory orders are appealable; section 1294 does not"].) The question before us is not whether that policy is sound, as Kirk and Marshall suggest, but whether such resort to the courts is permissible in light of the limited scope of judicial review authorized by the CAA. For the reasons discussed, it is not. (See generally *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 ["the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus

---

[5] Similarly in *Judge* we explained that, unlike the partial final award in *Hightower*, the clause construction award, while arguably distinct from the merits of the parties' dispute, did not "merely reserve potential or conditional issues relating to implementation of a remedy." (*Judge, supra*, 232 Cal.App.4th at p. 636.)

16

avoid potential delays at the trial and appellate levels"]; *Kaiser Foundation*, *supra*, 13 Cal.App.5th at p. 1150 ["it has long been recognized that parties typically choose arbitration precisely to avoid 'the complications of traditional judicial review'"].)

  b. *The superior court's order dismissing Kirk and Marshall's petition lacks the finality required for it to be appealable*

Quoting section 1294, subdivision (c), which makes appealable "[a]n order vacating an award unless a rehearing in arbitration is ordered," we observed in *Judge*, *supra*, 232 Cal.App.4th at page 633, "at first blush," a superior court's order vacating an arbitrator's clause construction award without ordering a rehearing would appear to be appealable. However, referring to case law holding an order confirming an interim arbitration award is not appealable under sections 1287.4 and 1294, subdivision (d)[6]—that is, where the merits of the parties' underlying controversy have not been fully resolved—we explained the appeal then before us raised the question whether that same finality requirement applied to all orders listed in section 1294, including an order vacating a nonfinal arbitration award. We held it did. (*Judge*, at pp. 633-634.)

"There are good reasons for applying a finality requirement to orders listed in section 1294," we stated. (*Judge*, *supra*, 232 Cal.App.4th at p. 634.) "Without such a requirement, a wide variety of orders vacating (or dismissing petitions to vacate) interim arbitration awards would be appealable, which would

---

[6]  Section 1287.4 provides, "If an award is confirmed, judgment shall be entered in conformity therewith." Section 1294, subdivision (d), as discussed, makes appealable a judgment confirming an arbitration award.

17

interfere with the "'efficient, streamlined procedure[]'" that is supposed to be arbitration's 'fundamental attribute.'" (*Ibid*.)

In *Kaiser Foundation*, *supra*, 13 Cal.App.5th at page 1139, we reiterated the holding of *Judge* that the finality requirement of earlier case law applied to all orders listed in section 1294, not just to judgments entered under section 1294, subdivision (d), and that superior court orders confirming, vacating or dismissing petitions directed to interim and nonfinal arbitration awards were not appealable.[7]  Because the emergency arbitrator's preliminary injunction ruling is not an award within the meaning of section 1283.4 and is anything but final, Kirk and Marshall's appeal from the superior court's dismissal of their petition to vacate that interim order must be dismissed as taken from a nonappealable order.

We recognize the court in *Maplebear*, *supra*, 26 Cal.App.5th 394 reached a contrary conclusion, declining to follow the full reach of *Judge* and holding an order dismissing a petition to

---

[7]    Even *Hightower*, *supra*, 86 Cal.App.4th 1415, which recognized an arbitrator was authorized to issue incremental awards and held under certain limited circumstances such an incremental award could be confirmed by the superior court, did not hold the resulting nonfinal order was appealable.  Rather, reviewing the superior court's interlocutory judgment in a writ proceeding, the court of appeal explained, "Appellate relief from such judgment, as is true with respect to interlocutory judgments generally, would be available by application for an extraordinary writ.  The granting of appellate relief at this stage, however, would, as in all such cases, require a proper showing of justification for immediate appellate intervention; in other words, the aggrieved party would have to make a demonstration as to why an appeal from the judgment confirming the ultimate final award would not be adequate." (*Id*. at p. 1440.)

18

vacate a partial final award regarding class arbitration for lack of jurisdiction was appealable. (*Maplebear*, at pp. 401-402.)[8] Noting the superior court in *Judge* had reached the merits of the arbitrator's interim ruling, the *Maplebear* court stated, "Our case is different. Here, we confront an appeal from a trial court order that dismissed a petition to vacate on the ground of no trial court jurisdiction. We conclude that the trial court order is appealable under section 1294, subdivision (b), as an order dismissing a petition to vacate an arbitration award." (*Id.* at p. 402.) Nothing more was said. In particular, the court left unexplained why an order granting or dismissing a petition to vacate an interim award on the merits was not appealable notwithstanding the literal language in section 1294, subdivisions (b) and (c), but an order dismissing the same petition for lack of jurisdiction was.

In fact, the distinction identified in *Maplebear* makes little sense. By this reasoning, if the superior court fails to recognize the limits of its jurisdiction and grants a petition to vacate a nonfinal award that it ought not to have even considered—as was the case in *Judge*—the erroneous order is not appealable. But if

_____

8 The primary challenge to appealability in *Maplebear*, *supra*, 26 Cal.App.5th 394 was that the superior court had denied, rather than dismissed, the petition to vacate the arbitrator's interim award, an order not listed as appealable in section 1294. (*Maplebear*, at pp. 400-401.) The court of appeal rejected that argument, reasoning the CAA does not contemplate denial of a petition to vacate an award in the circumstances presented by the case before it, and construed the superior court's order as dismissing the petition to vacate an award. (*Id.* at p. 401.) The superior court here used both verbs, dismissing, as well as denying, Kirk and Marshall's petition to vacate the preliminary injunction.

19

the superior court properly understands that interim rulings by an arbitrator are not reviewable until the final award is entered and dismisses a premature petition to vacate, that entirely correct jurisdictional ruling is appealable.  Nothing in the governing statutory language, let alone public policy encouraging arbitration as a speedy and relatively inexpensive method of dispute resolution with limited judicial intervention, supports that outcome.

We adhere to the holding and rationale of *Judge* and dismiss the appeal.

## DISPOSITION

The appeal is dismissed.  The parties are to bear their own costs in this proceeding.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

20